**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**XAVIAN J. RAY, SR.**                                                    **PLAINTIFF**

**VERSUS**                                           **CIVIL ACTION NO. 1:24-cv-00295-RPM**

**HARRISON COUNTY, MISSISSIPPI, et al.**                       **DEFENDANTS**

**ORDER GRANTING MOTION [33] FOR SUMMARY JUDGMENT**

On September 26, 2024, *pro se* Plaintiff Xavian J. Ray, Sr., filed this lawsuit under 42 U.S.C. § 1983. When he filed his Complaint, Plaintiff was an inmate housed at the Harrison County Adult Detention Center in Gulfport, Mississippi, [1] at 2, but he is now housed in the custody of the Mississippi Department of Corrections ("MDOC") at the Marion/Walthall County Correctional Facility in Columbia, Mississippi, [21] at 1. Plaintiff names eight Defendants: (1) Harrison County, Mississippi; (2) Matthew Haley, (3) Captain Elaine Lege, (4) Warden Evan Hubbard, (5) Chief Alan Weatherford, (6) E.R.T. Deputy Unknown Phillips, (7) Deputy Anthony Bowman, and (8) E.R.T. Deputy Unknown Hons. [1] at 1-2. Plaintiff is proceeding *in forma pauperis* [5], and his claims were clarified at an Omnibus Hearing on April 7, 2025.[1]

On June 16, 2025, Defendants Haley, Lege, Hubbard, Phillips, Bowman, and Hons ("the moving Defendants") filed a Motion [33] for Summary Judgment Due to Plaintiff's Failure to Exhaust Administrative Remedies. Harrison County joined [35] their Motion [33] on June 25, 2025.[2] Plaintiff did not respond, despite having a chance to do so. (Text-Only Order, Apr. 7, 2025).

---

[1] *See Spears v. McCotter*, 766 F.2d 179, 181-82 (5th Cir. 1985) (authorizing the magistrate judge to "hold an evidentiary hearing" to allow a *pro se* plaintiff to provide a more definite statement), *abrogated on other grounds by Neitzke v. Williams*, 490 U.S. 319, 324 n.3 (1989).

[2] Weatherford has yet to be served with process. The Court sent Weatherford's Notice of Lawsuit and Request to Waive Service of a Summons to counsel for the City of Gulfport, Mississippi, [10] at 1-2, but counsel has not waived service on Weatherford's behalf.

For the following reasons, the Motion [33] for Summary Judgment Due to Plaintiff's Failure to Exhaust Administrative Remedies will be granted. Plaintiff's claims against Harrison County and the moving Defendants will be dismissed without prejudice. Separately, Plaintiff's claims against Weatherford will be dismissed with prejudice as frivolous under 28 U.S.C. § 1915(e)(2)(B)(i). This case will be closed.

## I. BACKGROUND

In 2018, Plaintiff pled guilty to residential burglary under Mississippi Code § 97-17-23(1) and was sentenced to serve twenty-five years in MDOC custody, with ten years to serve and fifteen years suspended, plus five years of reporting post-release supervision. *State of Miss. v. Ray*, No. 24CI1:17-cr-00417 (Harrison Cnty. Cir. Ct.) (Docs. 42, 46).[3] Plaintiff was released from custody in 2023, but his post-release supervision was revoked the next year because he was charged with another offense while on probation. *Ray*, No. 24CI1:17-cr-00417 (Docs. 51-52, 67); [33-2] at 30-32. He is now serving the rest of his original sentence. *Ray*, No. 24CI1:17-cr-00417 (Doc. 67).

### A. Plaintiff's Allegations

Plaintiff was housed at HCADC pending his revocation proceedings in 2024, [32] at 9, and the events giving rise to this lawsuit principally occurred there. On September 20, 2024, Plaintiff "got in[to] an altercation with [another] . . . inmate and . . . slipped and fell." *Id*. at 14. The other inmate "landed on top of [him]," and Plaintiff believes that he "dislocated" his shoulder as a result. *Id*. Deputy Bowman later "ran . . . into [Plaintiff's] cell and threatened [him]." [1] at 7. Deputy Bowman accused Plaintiff of "faking" his injuries, [32] at 20, and subsequently "refused [to give him] dayroom time," [1] at 7. Plaintiff was placed "in the hole [for] seven days," [32] at 22, until

---

[3] The Court "may take judicial notice of matters of public record." *Ruiz v. Brennan*, 851 F.3d 464, 468 (5th Cir. 2017).

September 27, 2024, *id*. at 91.

Plaintiff claims that Deputy Phillips and Deputy Hons initially denied medical care for his injured shoulder. [1] at 4. Though medical staff were available to see Plaintiff right after his injury, Deputy Phillips "turned them away," [7] at 2, and wrongly advised that Plaintiff had "refused medical treatment," [8] at 3. Plaintiff received ibuprofen for his injury the next day, [32] at 62, and a more thorough examination (including an x-ray) was performed the following month, *id*. at 42-43. Yet Plaintiff reported that he was "still in pain" by the time he filed this lawsuit. [7] at 5. Plaintiff sued Haley, Lege, and Hubbard simply because they are in positions of authority at HCADC, [32] at 31-33, and he sued Harrison County for "fail[ing] to correct misconduct" and for "encouraging the denial of healthcare" for inmates, [8] at 1.

At the Omnibus Hearing, Plaintiff testified that he filed an "initial grievance" form about this incident, and he received a quick response. [32] at 11. But he testified that he "never had a chance to write them back because [he] was in the hole for seven days." *Id*. He claims that his custodians "would not give [him any] grievance forms" during that time and that any subsequent grievances he tried to file were thrown away. *Id*. at 12. When Plaintiff was returned to the general population, about ten days after the injury, he used the kiosk to submit "more grievance forms." *Id*. at 22, *see also id.* at 29 ("THE COURT: And did you file a grievance form at the kiosk once you got out of the hole? THE PLAINTIFF: Yes, sir, I did.").

Plaintiff was transferred to the South Mississippi Correctional Institution in Leakesville, Mississippi, on November 18, 2024. [32] at 23. He did not "[fill] out a sick call to have a medical provider look at [his] shoulder" during his time at SMCI. *Id*. Nor had he requested additional medical care at any other facility related to his shoulder injury by the time of the Omnibus Hearing.

3

*Id*. at 43, 80.

Unrelated to these events, Plaintiff claims that Gulfport Police Department Chief Weatherford planted two ounces of cocaine in his apartment in November 2012. [1] at 6. As a result, Plaintiff pled guilty to misdemeanor possession of paraphernalia and was sentenced to six months' probation. [32] at 37-38. Plaintiff "know[s] there is nothing much that can be done" about this incident, but he "wanted it documented." [1] at 6. Specifically, Plaintiff conceded at the Omnibus Hearing that this claim fails because of the "statute of limitations." [32] at 35.

### B. Defendants' Summary Judgment Evidence

Defendants submitted Plaintiff's inmate file as evidence. [33-2] at 1-60. Those records reveal that Plaintiff underwent the process of classification when he arrived at HCADC on August 6, 2024, including instructions on how to access the inmate handbook and how to report a grievance. *Id*. at 28. Moreover, Plaintiff testified at the Omnibus Hearing that he was housed at HCADC seven times before his incarceration in 2024 and that he was familiar with HCADC's grievance procedure. [32] at 48-49.

Defendants also submitted excerpts of the HCADC Inmate Handbook, which details the administrative grievance procedure as follows:

> HCADC has a formal three (3) step grievance policy for use by all inmates. Inmates are required to use this program before they proceed with filing a lawsuit. . . . Inmates are encouraged to continue to seek solutions to their concerns through informal means. However, to ensure their right to use the formal program they must make their request to the Grievance Officer in writing within a 30-day period after an incident has occurred. . . . All grievances must be filed on the correct standard grievance form provided. If an inmate is not satisfied with the Level I response, he/she may proceed to Level II (Deputy Warden). If not satisfied with a Level II response, he/she may proceed to Level III (Warden). Level III is the final step in the process . . . . Notice of acceptance or rejection will be given via the inmate's grievance form.

4

[33-5] at 2.

Also included in Defendants' evidence is the affidavit of Michelle Russell, the grievance officer at HCADC. [33-3] at 1-3. Russell testified that Plaintiff "only submitted a Level I Grievance on the Kiosk" and that "Level II or Level III grievances were never pursued" regarding the incident that occurred on September 20, 2024. *Id*. at 2. All of Plaintiff's grievances "related to the allegations of denial of medical treatment" are attached to Russell's affidavit. *See id*. Plaintiff confirmed at the Omnibus Hearing that the following three grievances are the only ones he submitted about the events giving rise to this lawsuit. [32] at 70.

Plaintiff's first grievance, dated September 24, 2024, reads, in part, as follows:

> I was injured in an altercation on 9/20/24. I was originally denied medical care by Deputy Hands and Deputy Philips. After that shift left, the next shift got medical for me. The nurse told me I couldn't be seen till next week and prescribed me meds for pain. On Tuesday 9/24 they advised me my medication for pain ran out. As of today, 9/24/24 I still have not been seen by medical or given an xray. I'm still in severe pain, and every one since then had denied me care.

[33-4] at 2. Plaintiff received a response to this grievance on September 25, 2024, advising that "[m]edical was contacted," that he was "being put on ibuprofen," and that he "must wait to be seen by disciplinary." *Id*.

Plaintiff's second grievance, dated September 4, 2024,[4] reads, in part, like this:

> On or about 9-25-2024 Officer Bowman open[ed] my cell door and ran up to my room . . . and threaten[ed] to beat me and call[ed] me names. I wrote a grievance form and handed it to Lt. Pickens. Lt. Pickens took my grievance form and walked out of B-D. It's not my fault she never turned my grievance in. It's not my responsibility to turn in grievances. . . . Respectfully [Deputy] Bowman delayed and interfered with me receiving proper medical treatment. He also had two other inmates locked down for over 24 hours for no apparent reason.

---

[4] Plaintiff admits that "the date submitted is wrong on top of th[is] grievance," as it would be impossible to submit a grievance on September 4 about an incident occurring on September 25. [32] at 64-65. Plaintiff confirmed that this is the second grievance he filed about these events. *Id*.

5

[33-4] at 1. Plaintiff received a response, indicating his grievance was "[i]ncomplete." *Id*. The responding officer advised that "[a]n inmate may not write a grievance for another inmate," and that Plaintiff "must provide a time for the incident." *Id*. Plaintiff conceded at the Omnibus Hearing that he did not proceed to Level II with respect to this grievance "[b]ecause [he] felt like [he] was given the runaround." [32] at 73.

Finally, on October 3, 2024, Plaintiff submitted the following grievance:

> On or about Sept. 24th Lt. Pickens came in B-D. I called her to my cell #230. I asked if she could personally deliver my grievance form that was about [Deputy] Bowman. I can't remember the exact time but I want to say at or about 4 I think. She grabbed the grievance form from my door and walked out of B-D. I haven't heard from no one about this matter. Thank you for your time and patience.

[33-4] at 3. The response indicated that Plaintiff's September 24 grievance "did not have anything to do with Deputy Bowman." *Id*. It further indicated that no grievance about Bowman had been received, so any such complaint must be "resubmitted." *Id*.

## II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (quotation omitted). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quotation omitted). "On a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 397 (5th Cir. 2007). "In reviewing the evidence, the court

must therefore refrain from making credibility determinations or weighing the evidence." *Id*. at 397-98 (quotation omitted).

"Summary judgment is proper if the movant demonstrates that there is an absence of genuine issues of material fact." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). "The movant accomplishes this by informing the court of the basis for its motion, and by identifying portions of the record which highlight the absence of genuine factual issues." *Id.* "Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges its initial burden of demonstrating entitlement to summary judgment." *Mack v. Waffle House, Inc.*, No. 1:06-cv-00559-RHW, 2007 WL 1153116, at *1 (S.D. Miss. Apr. 18, 2007) (quotation and brackets omitted). "[O]nce a properly supported motion for summary judgment is presented, the nonmoving party must rebut with significant probative evidence." *Id*. (quotation omitted).

### III. DISCUSSION

Having reviewed and liberally construed the record, the Court concludes that Plaintiff failed to exhaust his administrative remedies with respect to the alleged denial of medical care at HCADC before filing this lawsuit, and his claims against Harrison County and the moving Defendants will be dismissed without prejudice. Separately, Plaintiff's claims against Weatherford are time-barred and will be dismissed with prejudice.

**A. Plaintiff's claims against Harrison County and the moving Defendants are unexhausted and will be dismissed without prejudice.**

Exhaustion of administrative remedies through the prison grievance system is a prerequisite for lawsuits filed under § 1983. *Wright v. Hollingsworth,* 260 F.3d 357, 358 (5th Cir. 2001); *see also* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions

7

under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). "Since exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury." *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010).

The Fifth Circuit takes a "strict approach" to the exhaustion requirement. *Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008) (quotation omitted). "Exhaustion is mandatory for 'all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Alexander v. Tippah Cnty., Miss.*, 351 F.3d 626, 630 (5th Cir. 2003) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)). Dismissal is mandatory where an inmate has failed to properly exhaust the applicable administrative grievance procedure before filing his complaint. *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012); *see also Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.").

A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Woodford*, 548 U.S. at 83-84. "Merely initiating the grievance process or putting prison officials on notice of a complaint is insufficient to meet the exhaustion requirement." *Evans v. Harrison Cnty. Adult Det. Ctr.*, No. 1:18-cv-00087-RHW, 2020 WL 980149, at *1 (S.D. Miss. Feb. 28, 2020). "The grievance process must be carried through to its conclusion before suit can be filed under the Prison Litigation Reform Act," or PLRA. *Id.* A properly exhausted claim has "complete[d] the administrative review process in

accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford*, 548 U.S. at 88. Those rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*.

"The exhaustion requirement hinges on the availability of administrative remedies." *Pettis v. Hall*, No. 1:19-cv-00127-RPM, 2021 WL 785096, at *1 (S.D Miss. Mar. 1, 2021) (quotation and brackets omitted). "An inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id*. (quotation and brackets omitted). An administrative grievance procedure is unavailable where: (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," (2) it is "so opaque that it becomes, practically speaking, incapable of use" by an ordinary prisoner, or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 643-44 (2016). "Exceptions to the exhaustion requirement only apply in extraordinary circumstances, and the prisoner bears the burden of demonstrating the . . . unavailability of administrative review." *Badger v. Fisher*, No. 5:16-cv-00107-MTP, 2017 WL 5906045, at *2 (S.D. Miss. Nov. 30, 2017) (quotation omitted).

It is undisputed that HCADC's grievance procedure requires the completion of three steps, [33-5] at 2, and that Plaintiff had the opportunity to familiarize himself with that procedure long before these events occurred, [32] at 48-49; [33-2] at 28. Yet Plaintiff did not complete the formal

9

three-step grievance procedure before filing this lawsuit. The grievance officer at HCADC "found no record of any Level II or III grievances submitted by [Plaintiff] . . . relating to his claim of denial of medical treatment." [33-3] at 2.

Plaintiff tries to rebut this evidence in two ways. First, Plaintiff testified[5] that he "thought" he had completed the second and third steps by filing the three grievances discussed above. [32] at 71. But the last of the three grievances was submitted on October 3, 2024, [33-4] at 3—after Plaintiff filed this lawsuit on September 26, 2024. "Exhaustion must be completed before suit; it may not be excused if it occurs while the suit is pending." *Wheater v. Shaw*, 719 F. App'x 367, 369 (5th Cir. 2018); *see also Paulino v. United States*, No. 5:08-cv-00110, 2009 WL 2996678, at *14 (E.D. Tex. Sept. 15, 2009) ('[T]he exhaustion process must be completed before the federal lawsuit is filed; even complete exhaustion following the filing of the lawsuit is not sufficient."). Plaintiff's "later grievance[] that he purportedly pursued to conclusion do[es] not establish that the exhaustion requirement was satisfied before filing suit." *Boyd v. Collum*, No. 20-60327, 2022 WL 1115139, at *1 (5th Cir. Apr. 14, 2022).[6]

Alternatively, Plaintiff argues that administrative remedies were unavailable to him at HCADC. During his testimony, Plaintiff pivoted to claim that he "didn't know [the grievance procedure] took three steps." [32] at 57. But uncontested record evidence shows that HCADC's administrative grievance procedure was outlined in the inmate handbook, which was available to

---

[5] "[T]he Court considers . . . sworn testimony at the *Spears* hearing to be competent summary judgment evidence." *Evans v. Miss.*, No. 2:11-cv-00002, 2012 WL 4480731, at *4 n.3 (S.D. Miss. Sept. 26, 2012).

[6] Because the last of Plaintiff's three grievances was not timely filed, the Court does not answer whether the filing of three essentially unrelated grievances would otherwise satisfy HCADC's three-step grievance procedure.

10

Plaintiff during his entire stay there. Thus, Plaintiff had "avenues for discovering the procedural rules governing [his] grievances." *See Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010); *see also Quick v. Hodge*, No. 2:16-cv-00167-KS-MTP, 2018 WL 842197, at *4 (S.D. Miss. Jan. 22, 2018) (holding that administrative remedies were available to a plaintiff who claimed otherwise when uncontradicted evidence showed that he was "made aware of the program and its procedures when [he was] processed into the jail"), *report and recommendation adopted by*, 2018 WL 834943, at *1 (S.D. Miss. Feb. 12, 2018). As the contours of HCADC's grievance procedure were knowable, "[m]ere ignorance of the exhaustion requirement . . . does not excuse . . . [P]laintiff's failure to exhaust." *Gaitanis v. S. Health Partners*, No. 2:19-cv-00043-KS-MTP, 2019 WL 7782115, at *2 (S.D. Miss. Oct. 29, 2019), *report and recommendation adopted by*, 2020 WL 476378, at *1 (S.D. Miss. Jan. 29, 2020).

Finally, Plaintiff testified that he was "denied [the opportunity to use the] grievance process" during his seven-day stay in administrative segregation. [32] at 11. Specifically, he testified that his custodians "would not give [him any] grievance forms" during that time. *Id*. at 12. But Plaintiff also testified to submitting three grievances, *id*. at 70, one of which is dated September 24—during his stay in administrative segregation, [7-1] at 1-3. This "conflicting testimony" fails to demonstrate that administrative remedies were unavailable. *See Bennett v. Wayne Cnty., Miss.*, No. 4:11-cv-00001-FKB, 2013 WL 1420895, at *1 (S.D. Miss. Apr. 8, 2013).

Even if Plaintiff was denied grievance forms during his stay in "the hole," [32] at 22, that still does not demonstrate the unavailability of administrative remedies at HCADC. By his own admission, Plaintiff stayed in administrative segregation for one week—from September 20-27, 2024. [32] at 22, 91. Once he was released from administrative segregation, he had access to the

kiosks and "started writing more grievance[s]." *Id*. at 22. Since HCADC's grievance procedure places a 30-day deadline on the filing of grievances, [33-5] at 2, Plaintiff had between September 27 and October 20 to complain about the incident on September 20. And he in fact submitted a grievance on October 3, [33-4] at 3, demonstrating his ability to use the grievance procedure well within his window for doing so. Thus, Plaintiff "has failed to carry his burden of proving an exception to the exhaustion requirement." *See Eddy v. Reynolds*, No. 1:22-cv-00119-RPM, 2024 WL 3868217, at *6 (S.D. Miss. Aug. 19, 2024); *see also Ramirez v. Bureau of Prisons*, No. 3:16-cv-00626-HTW-LRA, 2017 WL 3135934, at *3-4 (S.D. Miss. May 31, 2017) (rejecting the argument that administrative remedies were unavailable where the plaintiff had filed other grievances while in custody), *report and recommendation adopted by*, 2017 WL 3132068, at *1 (S.D. Miss. July 21, 2017).

Plaintiff has adduced no documentary evidence to show that he in fact exhausted his administrative remedies with respect to these claims before filing this lawsuit. Thus, Plaintiff has not carried his burden as non-movant of "go[ing] beyond the pleadings and designat[ing] specific facts showing that there is a genuine issue for trial" on this point. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Because "[p]re-filing exhaustion is mandatory," *Gonzalez*, 702 F.3d at 788, but was not achieved in this case, Plaintiff's claims against Harrison County and the moving Defendants will be dismissed without prejudice for failure to exhaust administrative remedies.

### B. Plaintiff's claims against Weatherford are time-barred and will be dismissed with prejudice.

Because Plaintiff is proceeding *in forma pauperis* [5], his Complaint is subject to the case-screening procedures outlined in the PLRA. *See* 28 U.S.C. § 1915(e)(2). Accordingly, the Court

may dismiss any of his claims *sua sponte* if they are determined to be legally frivolous. *Id.* § 1915(e)(2)(B)(i); *see, e.g.*, *Smith v. Anderson*, No. 2:11-cv-00221-KS-MTP, 2013 WL 1182995, at *1 (S.D. Miss. Feb. 13, 2013) (dismissing a case based on a motion for summary judgment and a "*sua sponte* . . . evaluation pursuant to 28 U.S.C. § 1915(e)(2)"), *report and recommendation adopted by* 2013 WL 1182984, at *1 (S.D. Miss. Mar. 21, 2013). A claim is frivolous "if it lacks an arguable basis in law or fact or if there is no realistic chance of ultimate success." *Henthorn v. Swinson*, 955 F.2d 351, 352 (5th Cir. 1992). A complaint that is time-barred by the statute of limitations is properly dismissed as frivolous under § 1915. *See Bates v. Price*, 368 F. App'x 594, 595 (5th Cir. 2010).

There is no federal statute of limitations for civil rights actions brought under § 1983. *Owens v. Okure*, 488 U.S. 235, 239 (1989). "Because § 1983 claims are best characterized as personal injury actions, [the Supreme Court has] held that a State's personal injury statute of limitations should be applied to all § 1983 claims." *Id.* at 240-41 (quotation omitted). "The applicable Mississippi statute of limitations period is three years." *Whittington v. City of McComb*, No. 5:15-cv-00052-DCB-MTP, 2016 WL 8223427, at *3 (S.D. Miss. Nov. 23, 2016) (citing MISS. CODE ANN. § 15-1-49).

While Mississippi law governs the applicable limitations period, federal law governs when a claim accrues. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). An action accrues when a plaintiff has "a complete and present cause of action." *Id.* (quotation omitted). The limitations period begins to run when a plaintiff "becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001) (internal quotations and citations omitted).

13

Under these principles, Plaintiff's claim against Weatherford accrued in November 2012—when Weatherford allegedly planted cocaine in Plaintiff's apartment, and Plaintiff "[saw] him do it." [32] at 36; *see also* [1] at 6. Given that testimony, Plaintiff knew of his constitutional injury on the date the cocaine was allegedly planted. Thus, the period for filing claims arising from these events expired in or around November 2015—about nine years before this Complaint [1] was filed. Notably, Plaintiff concedes that this claim is barred by the applicable statute of limitations. [32] at 35. Thus, Plaintiff's claims against Weatherford are time-barred and will be dismissed with prejudice as frivolous under § 1915(e)(2)(B)(i).

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion [33] for Summary Judgment Due to Plaintiff's Failure to Exhaust Administrative Remedies is **GRANTED**. Plaintiff Xavian J. Ray, Sr.'s claims against Harrison County, Mississippi; Matthew Haley; Elaine Lege; Evan Hubbard; Unknown Phillips; Anthony Bowman; and Unknown Hons are **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that Plaintiff's claims against Chief Alan Weatherford are **DISMISSED WITH PREJUDICE** as frivolous under 28 U.S.C. 1915(e)(2)(B)(i).

A separate final judgment will be entered under Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED,** this 26th day of January, 2026.

/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE